UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
SENECA INSURANCE COMPANY, INC.      :
a/s/o 121 WESTMORELAND, LLC,          :
                                                          :
                      Plaintiff,              :
                                                          :
          -v-                                       :
                                                          :
AIR PROFESSIONAL ASSOCIATES, LLC,  :
                                                          :
                      Defendant.            :
----------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _5/31/16_

**OPINION AND ORDER**

14-CV-7330 (JLC)

**JAMES L. COTT, United States Magistrate Judge.**

In this subrogation action, plaintiff Seneca Insurance Company, Inc., as subrogee of 121 Westmoreland, LLC, sues defendant Air Professional Associates LLC for breach of contract, negligence, negligent misrepresentation, and words negligently spoken. These claims arise from an incident in 2014 that resulted in property damage to a building in White Plains, New York. Presently before the Court is defendant's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons set forth below, defendant's motion is denied as to plaintiff's breach of contract and negligence claims, and granted as to plaintiff's negligent misrepresentation and words negligently spoken claims.

1

## I. BACKGROUND

### A.    The Parties

Seneca Insurance Company ("Seneca") is organized under New York law,
with its principal place of business at 160 Water Street in New York City.
Complaint ("Compl.") dated Sept. 10, 2014 ¶ 6 (Dkt. No. 1).

Air Professional Associates, LLC ("APA") is a limited liability heating and
cooling service company, with its primary office at 31 Fields Lane in North Salem,
New York. Affidavit of Eric Goldberg dated March 28, 2016 ("Goldberg Aff.") (Dkt.
No. 36), Ex. D (Deposition of Merv Blank ("Blank Dep.") at 20).

### B.    Jurisdiction

When a complaint names a limited liability company as a party, diversity of
citizenship turns on the citizenship of the company's members. *See, e.g.,*
*Handelsman v. Bedford Vill. Assocs. Ltd. P'ship,* 213 F.3d 48, 51–52 (2d Cir. 2000).
APA is incorporated in Connecticut, and its owners/members, Merv Blank and
Sherry Blank, a married couple, are citizens of Connecticut. Blank Dep. at 4, 7, 19.
Thus, there is complete diversity of citizenship between Seneca and APA.
Additionally, the amount in controversy in this matter exceeds $75,000. In fact,
pursuant to the terms of the insurance policy issued by Seneca, it paid more than
two million dollars to cover the claim submitted by its insured for damages to the
property. Compl. ¶ 28. Accordingly, the Court has subject matter jurisdiction over
this action pursuant to 28 U.S.C. § 1332(a)(2).

2

## C.    Factual Background

This case arises out of water damage to a commercial building at 121 Westmoreland Avenue in White Plains, New York, caused by a frozen pipe rupture in January 2014. Compl. ¶¶ 24-25; Affidavit of Doreen Correia dated Feb. 26, 2016 ("Correia Aff.") (Dkt. No. 31), Ex. C (Deposition of Saeed Coates ("Coates Dep.") at 180-84); Goldberg Aff., Ex. E (Deposition of Patrick Walker ("Walker Dep.") at 69-74). The facts are construed in the light most favorable to Seneca, the non-moving party, and they are derived from the parties' Local Rule 56.1 statements, and the exhibits, depositions, and expert reports submitted by the parties in connection with the motion.

In July 2013, Saeed Coates ("Coates") purchased 121 Westmoreland Avenue through 121 Westmoreland, LLC ("Westmoreland"), one of several real estate development entities that he owned with a partner. Coates Dep. at 6-7, 13, 17, 105, 112. There was a vacant, six-story commercial building on the property. Coates Dep. at 26. Coates insured the property with Seneca. Coates Dep. at 27, 122.

At the time of the purchase, Coates lived in Massachusetts, and he hired a local resident of White Plains named Patrick Walker to "keep eyes" on the building. Coates Dep. at 5, 11. To that end, Walker visited the property twice a month to collect garbage and perform outdoor maintenance. Walker Dep. at 17-18. As winter approached, Coates requested that Walker salt and shovel the property's walkway. *Id.* 26. On January 7, 2014, Walker entered the building to retrieve his shovel and salt, and noted that the temperature inside was unusually low. *Id.* at 46-47.

3

Walker called Coates and told him that the building felt "a little bit chillier than normal." *Id.* at 46; *see also* Coates Dep. at 134, 140.

Coates consulted a list of vendors provided to him by the property's prior owners, and called APA to ask if it could examine the building. Coates Dep. at 137; Blank Dep. at 74-75. Coates knew that APA had installed the building's boiler system and thought that the company would be "semi-oriented" to "the systems." Coates Dep. at 173. Two days later, on January 9, 2014, APA dispatched service manager Ryan Kelly to 121 Westmoreland Avenue. Goldberg Aff. Ex. C (Deposition of Ryan Kelly ("Kelly Dep.") at 40). When Kelly arrived at the property, he went to the boiler room in the basement. Kelly Dep. at 51. There, he saw water spraying from ruptured pipes. Kelly Dep. at 56. Kelly also noticed that the basement floor was coated in ice and water, and that while the boilers were on and "energized," they were "stone cold"—a "dangerous" condition. Kelly Dep. at 53, 57-58. Kelly then powered off the boilers to prevent further electrical damage, and called Coates to apprise him of the situation. Kelly Dep. at 65; Coates Dep. at 142. According to Coates, Kelly said that the boiler room needed to be thawed and cleaned out before APA could assess or repair the damage. Coates Dep. at 146, 171.

The parties dispute whether Kelly volunteered to turn off the building's water, or whether Coates asked him to do so. *Compare* Kelly Dep. at 66, 108, *with* Coates Dep. at 147. In any event, Kelly told Coates that he would turn off the water, and before leaving the property he used a pipe wrench to turn off the water main in the building's basement. Kelly Dep. at 72-76. According to Kelly, he told

4

Coates that the building might have more than one water main. Kelly Dep. at 70. But Coates testified that he thought the building had only one water system, and that he understood Kelly to have turned off the water entirely. Coates Dep. at 147. APA's invoice for services indicates that on January 9, 2014, APA "found water leaks on second and third floor and boiler room floor" and "shut down water" at 121 Westmoreland Avenue. Correia Aff. Ex. F (1/10/14 APA Invoice).

Coates also testified that APA was scheduled to return to the property on January 13, 2014. Coates Dep. at 158-59. The parties dispute whether APA told Coates that it could not begin work on the boilers until a plumber cleared the domestic water lines. *Compare* Kelly Dep. at 96-97, 103, *and* Blank Dep. at 86, *with* Coates Dep. at 153-57. Kelly returned to the property two days after his initial assessment to make note of serial numbers for replacement boiler parts. Kelly Dep. at 89-91; Blank Dep. at 90-91; Coates Dep. at 174.

After APA's service call, Coates asked Walker to thaw and clean the boiler room. Walker Dep. at 62-66; Coates Dep. at 180-81. Coates met Walker at the property on January 12, 2014 to assess his progress. Walker Dep. at 69; Coates Dep. at 180-81. When Coates and Walker entered the building, they heard running water, and they worked their way upstairs to find its source. Walker Dep. at 69-74; Coates Dep. at 181-82. On the sixth floor, a fire hose and the building's standpipe fire-suppression system were ruptured and "gushing" water. Coates Dep. at 183. The fire department then came to the property to turn off the standpipe in the first floor stairwell. Walker Dep. at 77-80; Coates Dep. at 184-85.

Seneca covered Westmoreland's loss and, as property insurer and subrogee, Seneca now seeks to recover the monies it paid on the claim. Compl. ¶ 28, Wherefore Cl.

## D.    Procedural Background

On September 10, 2014, Seneca filed its four-count complaint alleging breach of contract, negligence, negligent misrepresentation, and words negligently spoken. (Dkt. No. 1). APA answered the complaint on September 30, 2014. (Dkt. No. 6). Following the completion of discovery, and an unsuccessful mediation on December 10, 2015, APA moved for summary judgment on February 26, 2016. (Dkt. No. 30). On March 28, 2016, Seneca filed an opposition to APA's motion. (Dkt. No. 38). APA filed a reply affirmation on April 11, 2016. (Dkt. No. 40). The parties have consented to have me preside over the case for all purposes under 28 U.S.C. § 636(c). (Dkt. No. 10).

## II. DISCUSSION

### A.    Standard of Review

Summary judgment is appropriate where the moving party "shows that there is no genuine dispute as to any material fact" and that he "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Gonzalez v. City of Schenectady*, 728 F.3d 149, 154 (2d Cir. 2013). A fact is material if it "might affect the outcome of the suit under the governing law" of the claims involved. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute as to a material fact exists where "the evidence is such that a reasonable jury could return a verdict for the

6

nonmoving party." *Ramos v. Baldor Specialty Foods, Inc.*, 687 F.3d 554, 558 (2d Cir. 2012) (citation omitted). A party cannot rely on "conclusory allegations or unsubstantiated speculation" at the summary judgment stage of the case. *Jeffreys v. City of N.Y.*, 426 F.3d 549, 554 (2d Cir. 2005) (citation omitted). Rather, parties must cite "particular parts of materials in the record," including depositions, documents, affidavits, declarations, and admissions in support of its assertions, or show that the adverse party "cannot produce admissible evidence" to support its own asserted facts. Fed. R. Civ. P. 56(c)(1)(B).

The moving party bears the initial burden of establishing that there is no genuine dispute as to any material fact. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Generally, the burden then shifts to the non-moving party to "'go beyond the pleadings' and 'designate specific facts showing that there is a genuine issue for trial.'" *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008) (quoting *Celotex*, 477 U.S. at 324).

"The function of the district court in considering the motion for summary judgment is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists." *Kaytor v. Electric Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010) (citation omitted). At this stage, the Court does not engage in trial-like "[c]redibility assessments, choices between conflicting versions of the events, and the weighing of evidence." *McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir. 2006) (citation omitted). Instead, in considering the record, the Court must "resolve all ambiguities and draw all reasonable inferences against the

movant." *Beyer v. Cty. of Nassau*, 524 F.3d 160, 163 (2d Cir. 2008) (citation

omitted).  If the court determines that, even "with all permissible inferences and

credibility questions resolved in favor" of the non-moving party, "there can be but

one reasonable conclusion as to the verdict"—that is, for the moving party—

summary judgment is appropriate. *Kaytor*, 609 F.3d at 546 (quoting *Liberty Lobby*,

477 U.S. at 250).  However, "[i]f there is any evidence in the record that could

reasonably support a jury's verdict for the non-moving party, summary judgment

must be denied." *Am. Home Assurance Co. v. Hapag Lloyd Container Linie, GmbH*,

446 F.3d 313, 315 (2d Cir. 2006) (internal quotation marks and citation omitted).

## B.    Factual Disputes Preclude Summary Judgment as to Seneca's Breach of Contract and Negligence Claims

### 1.    Seneca's Breach of Contract Claim

Seneca does not specifically oppose APA's motion as to the breach of contract

claim, but in considering a motion for summary judgment courts "must review the

motion, even if unopposed, and determine from what it has before it whether the

moving party is entitled to summary judgment as a matter of law." *Vermont Teddy

Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 246 (2d Cir. 2004) (citation omitted).

As set forth below, APA fails to demonstrate entitlement to judgment as a matter of

law on Seneca's contract claim.

Under New York law, the elements of a cause of action for breach of contract

are: "(1) formation of a contract between plaintiff and defendant; (2) performance by

plaintiff; (3) defendant's failure to perform; and (4) resulting damage." *Clearmont*

8

*Prop., LLC v. Eisner*, 58 A.D.3d 1052, 1055 (3d Dep't 2009) (citation omitted).[1]  APA

contests the very existence of a contract between the parties. *See* Memorandum of

Law in Support of Defendant's Motion for Summary Judgment ("APA Mem.") at 1, 7

(Dkt. No. 33).  Nevertheless, it is undisputed that in a telephone conversation with

Coates, APA agreed to assess the temperature issue at 121 Westmoreland Avenue,

and that while at the property APA's service manager, Kelly, either offered or

further agreed to turn off the building's water.  APA's January 10, 2014 invoice

supports this notion by specifically referring to the fact that it had "shut down

water" at the property.  Thus, the evidence demonstrates that the parties entered

into an oral agreement for services, or, at a minimum, there are disputes of fact as

to whether they did so.  Oral agreements are valid and enforceable under New York

law. *See, e.g., A. Montilli Plumbing & Heating Corp. v. Valentino*, 90 A.D.3d 961,

962 (1st Dep't 2011).

Disputes of fact as to the scope of the parties' agreement also preclude

summary judgment.  For example, while APA asserts that Coates knew he needed

to retain a plumber, Coates testified that APA did not make a plumber's services a

prerequisite to its continued work.  Thus, while Coates appears to believe that APA

was engaged to repair his broken boilers, APA's version of events is that it made a

service call, and would be further engaged only after a plumber tested the building's

pipes. *See, e.g.*, Kelly Dep. at 103-04; Blank Dep. at 83-84.  Accordingly, summary

---

[1] Seneca brought this case pursuant to the Court's diversity jurisdiction. See 28
U.S.C. § 1332.  There is no dispute that New York tort and contract law apply.

9

judgment is denied as to Seneca's breach of contract claim. *See, e.g., Soldiers', Sailors', Marines' & Airmen's Club, Inc. v. Carlton Regency Corp.,* 128 A.D.3d 593, 594 (1st Dep't 2015); *Matthew Adam Props., Inc. v. The United House of Prayer for All People of the Church on the Rock of the Apostolic Faith,* 126 A.D.3d 599, 601 (1st Dep't 2015). [2]

## 2.   Seneca's Negligence Claim

Under New York law, a prima facie case of negligence is established if "(1) the defendant owed the plaintiff a cognizable duty of care; (2) the defendant breached that duty; and (3) the plaintiff suffered damage as a proximate result of that breach." *Stagl v. Delta Airlines, Inc.,* 52 F.3d 464, 467 (2d Cir. 1995) (citing *Solomon v. City of N.Y.,* 66 N.Y.2d 1026, 1027 (1985)).

The issue of duty in a negligence action is a question of law. *See Palka v. Servicemaster Mgmt. Servs. Corp.,* 83 N.Y.2d 579, 585 (1994) ("the definition of the existence and scope of an alleged tortfeasor's duty is usually a legal, policy-laden

---

[2] APA's reliance on *St. Paul Fire & Marine Ins. Co. v. JEMB Realty Corp.,* No. 05-CV-1958 (RMB), 2006 WL 2053241 (S.D.N.Y. July 20, 2006), for the proposition that a cause of action for breach of contract will not stand if it is based upon the same facts as a negligence cause of action is misplaced, as the contract at issue in that case included a waiver of subrogation not present here. *See* APA Mem. at 7-8. Although neither party has raised the issue, the Court notes that the inverse proposition often is upheld. *See Reade v. SL Green Operating P'ship, LP,* 30 A.D.3d 189, 190-91 (1st Dep't 2006) ("Generally, a tort cause of action that is based upon the same facts underlying a contract claim will be dismissed as a mere duplication of the contract cause of action."). In this case, however, "the abrupt nature of the injury and the resulting damages are both typical of tort claims." *Id.* Further, APA concedes that any "allegedly negligent conduct falls outside the scope of the contract." APA Mem. at 7. For these reasons, the Court declines to dismiss Seneca's negligence claim as duplicative of its breach of contract claim.

10

declaration reserved for Judges to make prior to submitting anything to fact-finding or jury consideration"). New York places a duty of care on persons who undertake to make repairs. *See, e.g., Alley Sports Bar, LLC v. SimplexGrinnell, LP*, 58 F. Supp. 3d 280, 287 (W.D.N.Y. 2014). To establish duty in an action for negligent repair, a plaintiff must show a defendant's "failure to correct conditions of which it has knowledge or failure to use reasonable care to discover and correct a condition which it ought to have found." *Rogers v. Dorchester Assocs.*, 32 N.Y.2d 553, 559 (1973) (citations omitted). Moreover, even the voluntary performance of an act can give rise to a duty of care "if the defendant's conduct can be shown to have placed the plaintiff in a more vulnerable position than the plaintiff would have been had the defendant refrained from undertaking the act." *Castiglione v. Vill. of Ellenville*, 291 A.D.2d 769, 770 (3d Dep't 2002).

As set forth above, it is undisputed that on January 9, 2014, APA undertook to assess the temperature issue at 121 Westmoreland Avenue. Further, APA was aware that the building's boilers were not working, thus creating a "dangerous" no-heat condition. Finally, it is undisputed that while at the property APA's service manager told Coates that he would turn off the water. These undisputed facts give rise to a duty of care.

Disputes of fact remain, however, as to the extent of APA's obligation to perform emergency boiler repair or to take measures to remedy the no-heat condition. First, it is unclear whether a competent HVAC repair person would have provided a more thorough response to a no-heat condition, as Seneca's expert

11

contends APA should have done. Goldberg Aff. Ex. A (October 30, 2015 Report of Engineer Daryl Smith ("Smith Rep.") at 33-36, 41-42).[3] Further, it is unclear whether a competent HVAC repair person, in the exercise of due care, would have done any more than Kelly did to secure the building's water system. *See* Smith Rep. at 36-42.

These disputes of fact as to whether APA met its duty of care preclude summary judgment as to Seneca's negligence claim. *See, e.g., Philip* v. *Deutsche Bank. Nat. Trust Co.*, No. 11-CV-8960 (PGG), 2014 WL 4953572 at \*4 (S.D.N.Y. Sept. 30, 2014) ("[J]uries determine whether and to what extent a particular duty was breached."), *aff'd*, No. 14-CV-4054, 2015 WL 6642978 (2d Cir. Nov. 2, 2015); *Gottlieb v. 31 Gramercy Park South Owners Corp.*, 276 A.D.2d 417, 417-18 (1st Dep't 2000); *Kingston v. City of N.Y.*, 228 A.D.2d 343, 344 (1st Dep't 1996).

## C. Summary Judgment is Granted as to Seneca's Negligent Misrepresentation and Words Negligently Spoken Claims

### 1. Seneca's Negligent Misrepresentation Claim

Seneca's negligent misrepresentation claim is based upon the same facts as Seneca's negligence claim. Compl. ¶¶ 51-62. APA contends that Coates unreasonably relied on Kelly's representation that the building's water was off. APA Mem. at 8-10. To establish a claim for negligent misrepresentation under New York law, a plaintiff must demonstrate "(1) the existence of a special or privity-like

---

[3] The Court declines to address Seneca's objections to APA's expert report at this time. *See* Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment ("Seneca Mem.") at 15-16. (Dkt. No. 38). Seneca is free to challenge APA's expert through a motion *in limine*.

relationship imposing a duty on the defendant to impart correct information to the plaintiff; (2) that the information was incorrect; and (3) reasonable reliance on the information." *Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 180 (2011).

Although neither party has addressed the existence of a special or privity-like relationship in its briefing, the absence of such relationship is fatal to Seneca's negligent misrepresentation claim. *See Kimmell v. Schaefer*, 89 N.Y.2d 257, 263 (1996). In considering whether a special relationship exists between parties sufficient to justify reliance on a negligent misrepresentation, courts consider three factors: (1) "whether the person making the representation held or appeared to hold unique or special expertise"; (2) "whether a special relationship of trust or confidence existed between the parties"; and (3) "whether the speaker was aware of the use to which the information would be put and supplied it for that purpose." *Kimmell*, 89 N.Y.2d at 264; *see also Air China, Ltd. v. Kopf*, 473 F. App'x 45, 49 (2d Cir. 2012).

As to the first factor, APA is not the type of professional that courts have found to possess unique or specialized expertise. *Compare Kimmell*, 89 N.Y.2d at 263 ("Professionals, such as lawyers and engineers, by virtue of their training and expertise, may have special relationships of confidence and trust with their clients, and in certain situations we have imposed liability for negligent misrepresentation when they have failed to speak with care."), *with Alley Sports*, 58 F. Supp. 3d at 294 (licensed fire alarm contractor), *and Sabre Int'l Sec., Ltd. v. Vulcan Capital Mgmt., Inc.*, 95 A.D.3d 434, 435, 439 (1st Dep't 2012) (security services provider).

As to the second factor, Coates' telephone call on January 7, 2014 was his first contact with APA. *See* Blank Dep. at 71; Coates Dep. at 88-89. Aside from Coates' assertion that he expected APA to be "semi-oriented" to "the systems," there is no evidence to suggest that Westmoreland and APA were anything more than commercial parties dealing at arm's length for boiler repair services. "[A]n ordinary arm's length business transaction" generally is insufficient to give rise to a special relationship of trust or confidence. *MBIA Ins. Corp. v. Countrywide Home Loans, Inc.,* 87 A.D.3d 287, 296 (1st Dep't 2011); *see also Air China,* 473 F. App'x at 49 ("Under New York law contractual relationships generally do not support a negligent misrepresentation claim."); *Basis Pac-Rim Opportunity Fund v. TCW Asset Mgmt. Co.,* 124 A.D.3d 538, 539 (1st Dep't 2015). Rather, the relationship between the parties must "suggest a closer degree of trust and reliance than that of the ordinary buyer and seller." *Dallas Aerospace, Inc. v. CIS Air Corp.,* No. 00-CV-1657 (BSJ), 2002 WL 31453789 at *3 (S.D.N.Y. Oct. 31, 2002) (citation omitted), *aff'd,* 352 F.3d 775 (2d Cir. 2003). Even the provision of repair services extending over multiple days has been found to constitute "an ordinary business transaction." *See Alley Sports,* 58 F. Supp. 3d at 295.

A reasonable juror could not conclude that APA rendered professional services, or that APA and Westmoreland had a special relationship of trust or confidence. Thus, APA may not be found liable for negligent misrepresentation. *Sabre Int'l Sec.,* 95 A.D.3d at 439. Summary judgment is thus granted as to Seneca's negligent misrepresentation claim.

14

### 2.    Seneca's Words Negligently Spoken Claim

Seneca's complaint asserts a fourth cause of action for words negligently spoken. Compl. ¶¶ 63-71. It appears from the caselaw that words negligently spoken and negligent misrepresentation are one and the same cause of action. *See, e.g., Am. Protein Corp. v. AB Volvo*, 844 F.2d 56, 63 (2d Cir. 1988); *Coolite Corp. v. Am. Cyanamid Co.*, 52 A.D.2d 486, 488 (1st Dep't 1976). As with negligent misrepresentation, "New York law generally does not recognize liability for words negligently spoken during commercial dealings." *Nielsen Media Research, Inc. v. Microsystems Software, Inc.*, No. 99-CV-10876 (LAP), 2002 WL 31175223 at *10 (S.D.N.Y. Sept. 30, 2002) (internal quotation marks and citation omitted). As set forth above, Westmoreland and APA engaged in an ordinary commercial transaction. Accordingly, to the extent that words negligently spoken is a separate cause of action, defendants are granted summary judgment as to that claim as well.

## III.  CONCLUSION

For the reasons set forth above, APA's summary judgment motion is denied as to Seneca's breach of contract and negligence claims, and granted as to Seneca's negligent misrepresentation and words negligently spoken claims. The Clerk of the Court is directed to close docket entry 30.

The Court will hold a conference with the parties on June 10, 2016 at 10 A.M.
to set a trial date.

**SO ORDERED.**

Dated: May 31, 2016
New York, New York

JAMES L. COTT
United States Magistrate Judge

16